STATE OF WEST VIRGINIA

*In re* **D.B.**

**No. 19-0993** (Ohio County 19-CJA-4)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.B., by counsel John M. Jurco, appeals the Circuit Court of Ohio County's September 25, 2019, order terminating her parental rights to D.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2019, the DHHR filed an abuse and neglect petition against the parents alleging substance abuse, domestic violence, and petitioner's exposure of the children to inappropriate individuals. Following the petition's filing, petitioner was incarcerated in Pennsylvania for a short time. Upon her release, she attended a multidisciplinary team ("MDT") meeting and admitted to methamphetamine use. Following the circuit court's requirement that she submit to random drug screens, petitioner submitted to some screens in February of 2019 that were positive for drugs, including methamphetamine. Thereafter, she ceased reporting for screens. At a later hearing, petitioner stipulated to both substance abuse and domestic violence. Based on this stipulation, petitioner was adjudicated as an abusing parent. The circuit court then granted

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

petitioner a post-adjudicatory improvement period that required, among other things, that petitioner obtain mental health treatment.

In September of 2019, the circuit court held a dispositional hearing and found that petitioner "minimized the domestic violence" in the home during her testimony. Additionally, the circuit court noted that petitioner claimed that her failure to comply with drug screening beyond February of 2019 was due to transportation issues, but found that she did not request assistance from the DHHR in obtaining the necessary transportation. Petitioner further admitted to associating with drug users and her own relapse during the proceedings. Further, the circuit court addressed petitioner's failure to comply with the requirement that she seek mental health treatment, finding that she made appointments to begin such treatment but failed to attend them. According to petitioner, she lacked insurance or other means to pay for treatment and testified that she "intend[ed] to go to the DHHR to apply for insurance after the [d]ispositional [h]earing." According to the circuit court, petitioner provided no explanation as to why "she waited so long to seek insurance and treatment." Petitioner also testified that she was homeless at the time of the dispositional hearing. As to her visitation with the child, the circuit court noted that, other than supervised phone calls early in the proceedings, petitioner "ha[d] not had any contact with [the child] since he was removed from her custody" in January of 2019. Based upon this evidence, the circuit court found that petitioner "willfully refused" to participate in the proceedings and failed to substantially comply with her improvement period. Accordingly, the circuit court found that the issues of abuse and neglect that necessitated the petition's filing persisted through the dispositional hearing. Further, given that petitioner was "actually . . . in a worse situation . . . than [she was] at the commencement of the case," the circuit court found that termination of her parental rights was in the child's best interests. As such, the circuit court terminated petitioner's parental rights to the child.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The father's parental rights were also terminated below. According to respondents, the permanency plan for the child is adoption in the current foster home.

On appeal, petitioner argues that termination of her parental rights was inappropriate because the evidence showed that there was a reasonable likelihood that she could correct the conditions of abuse and neglect in the near future. We note, however, that the evidence petitioner cites in support of her argument is insufficient to establish that the circuit court erred, given her total failure to comply with services designed to remedy the conditions of abuse and neglect. The evidence petitioner cites can be classified in one of two categories. The first is evidence of acknowledgment of the issues of abuse and neglect. This category of evidence includes petitioner's citation to her acceptance of responsibility by testifying during the proceedings, as opposed to invoking her Fifth Amendment right against self-incrimination or otherwise being "defiant"; admission to noncompliance with some services; and acknowledgment at the dispositional hearing that she required assistance with her substance abuse problem. While it is true that this Court has held that acknowledgment of the conditions of abuse and neglect is a prerequisite to correcting such conditions, it is also obvious that acknowledgment alone is woefully insufficient to correct such issues. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted) ("In order to remedy the abuse and/or neglect problem, the problem must first be acknowledged."). If anything, petitioner's acknowledgement of the issues of abuse and neglect serves only to make her utter lack of compliance with the services designed to remedy those conditions more stark. Essentially, petitioner admits on appeal that she recognized that her actions constituted abuse and neglect of the child, but the evidence shows that, despite such acknowledgment, she failed to undertake any steps necessary to remedy the abuse and neglect.

The other category of evidence to which petitioner cites can best be characterized as evidence that she believes shows that she worked toward remedying the issues of abuse and neglect. This includes petitioner's assertion that she and the father "had happily reconciled" by the time the dispositional hearing was held, thereby remedying the issues of domestic violence; her termination of a relationship with an inappropriate individual upon the MDT's request; her release from incarceration; and her demonstration of capacity to work and earn money. We find, however, that this evidence is not compelling. As to her assertion that she and the father were happily reconciled, we find that this unsupported assertion, in the absence of any evidence that either parent availed themselves of services designed to remedy the issues of domestic violence, does not establish that the issue was corrected. On the contrary, the fact that the parents continued their relationship without successful completion of such services only underscores the continued threat that domestic violence would occur. Further, while petitioner's release from incarceration, purported termination of an inappropriate relationship, and testimony to limited employment can be seen as positive developments, the fact remains that petitioner cannot cite to any evidence that she attempted to comply with specific services designed to correct the conditions of abuse and neglect below.

As the circuit court found, petitioner failed to take the simple step of visiting the child, having failed to see him since his removal at the outset of the case. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Given petitioner's failure to visit the child for approximately nine months, it is clear that petitioner was unmotivated to improve her parenting ability sufficiently to regain custody of the child. Moreover, the record is clear that

substance abuse was a major factor in the child's abuse and neglect, yet petitioner only complied with the requirement that she submit to drug screens for the first month of the proceedings and, in fact, provided positive screens in that brief period. The record also does not reflect that petitioner completed substance abuse treatment of any kind. Similarly, petitioner failed to comply with the requirement that she undergo mental health treatment.[3] In response to her failure to screen and submit to mental health treatment, petitioner argues that a lack of transportation and insurance, respectively, caused her noncompliance. According to petitioner, she attempted to remedy the conditions of abuse and neglect during the proceedings, but did not have the resources to accomplish this task. However, the circuit court specifically found that petitioner never contacted the DHHR for assistance with these issues, thereby failing to fulfill her responsibilities under the terms of her improvement period. According to West Virginia Code § 49-4-610(4)(A), when a parent is granted an improvement period "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." Here, petitioner failed to fulfill this responsibility by taking no affirmative steps to contact the DHHR in order to facilitate the implementation of her services. In short, the circuit court's finding that petitioner "willfully" refused to participate in services during the proceedings is supported by overwhelming evidence.

According to West Virginia Code § 49-4-604(c)(3) (2019),[4] circumstances in which there is no reasonable likelihood conditions of neglect or abuse can be substantially corrected include when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Given the overwhelming evidence of petitioner's failure to comply with services, it is clear that the circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. Moreover, as the circuit court noted, petitioner not only failed to remedy these conditions but, in fact, allowed her situation to deteriorate to the point that she was homeless by the time the dispositional hearing was held. Given the evidence that the conditions at issue actually worsened during the proceedings, it is clear that the circuit court similarly did not err in finding that termination of petitioner's parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6) (2019), circuit courts are permitted to terminate parental rights upon such findings. Moreover, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia

---

[3]In support of this assignment of error, petitioner argues that she was not provided a psychological evaluation despite the fact that she was to be provided one as a term of her improvement period. Given petitioner's failure to comply with any of the requirements of her improvement period, including the required mental health treatment, it is unnecessary to address this argument. Contrary to petitioner's argument that the failure to provide this service somehow contributed to the termination of her parental rights, the record instead shows that it was petitioner's willful refusal to comply that resulted in such termination. As such, we find that she is entitled to no relief on this issue.

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 25, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[5]In support of her lone assignment of error, petitioner also argues that because the guardian opposed the termination of the father's parental rights to an older child who is not at issue on appeal, the guardian "saw some fatherly aspects in" the father. Although unclear, it appears that petitioner attempts to connect this speculative assumption about the guardian's motivations to an assertion that her own rights to D.B. should not have been terminated. Not only does this argument lack any logical application to the termination of petitioner's parental rights, it also ignores the fact that the guardian took this position because the older child, who was seventeen years old at the time of the dispositional hearing, expressly indicated that he did not wish for the father's rights to be terminated. Simply put, nothing about this set of circumstances has any bearing on the circuit court's termination of petitioner's parental rights.